### SEAMAN et al. v. McLAURY et al.

(Supreme Court, Appellate Division, Second Department. October 8, 1909.)

WILLS (§ 316*)—TESTAMENTARY CAPACITY—QUESTIONS FOR JURY.
    In an action to have a will adjudged invalid, the evidence *held* to require submission to the jury of the issue of testamentary capacity.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 743; Dec. Dig. § 316.*]

    Jenks, J., dissenting.

Appeal from Trial Term, Westchester County.

Action by Emma Seaman and others against Edward R. McLaury, as executor, and others. From a judgment entered on a verdict directed for defendants, plaintiffs appeal. Reversed.

The action was to have a will adjudged invalid.

Argued before JENKS, GAYNOR, BURR, RICH, and MILLER, JJ.

Lavinia Lally, for appellants.

John H. Corwin (Walter Moffat, on the brief), for respondents.

GAYNOR, J. It was error to direct a verdict for the defendants. The testatrix died in 1908, aged 88 years. Her alleged will was made in December, 1907. The testimony for the plaintiff was abundant that for several years before her death she was bed-ridden and helpless, was fed with a spoon, had no control of her bodily functions, and had to be cared for in all details like a babe. Indeed, this was conceded on the trial. The evidence tended to show also that she was mentally feeble, peculiar and uncertain. The defendants called no witnesses except the lawyer who came to her abode and drew the will, and the two witnesses thereto whom he selected and brought with him without any apparent request from the testatrix or any one in her behalf to do so. He was a stranger to her, and it does not clearly appear how he was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sent for, or that she caused him to be sent for. These three tell circumstantially what took place at the drawing and execution of the will, and their testimony would sustain the testamentary capacity of the testatrix, although it reveals that she was suspicious and odd. The will leaves $30,000 to the First Reformed Church of Yonkers, and $2,000 to the niece with whom she lived. This was substantially all of her estate. The next of kin of the testatrix were nephews and nieces. It was proved that she was on good terms with them and had frequently declared during the late years of her life that she would make no will as she did not want to prefer any of them. The testatrix was not a member of the said church. Its pastor had made frequent calls upon her.

The case was peculiarly one for the jury to say whether the testatrix had testamentary capacity.

The judgment should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur, except JENKS, J., who dissents.